# Sutherland
# ▪ Asbill & ▪
# Brennan LLP
ATTORNEYS AT LAW

Jeffrey P. Bialos
DIRECT LINE 202-383-0363
E-mail jeffrey.bialos@sablaw.com



14 Avenue of the Americas
40th Floor
New York, NY 10036
212 389 5000
fax 212 389 5099
www.sablaw.com

July 30, 2007

**VIA HAND DELIVERY**

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 1320
New York, New York 10007

      Re:    Mofet Etzion v. General Dynamics Land Systems, Inc.
              Civil Action No. 07-CIV-4566(LAP)

Your Honor:

     We write in response to GDLS's letter to this Court on July 20, 2007 regarding sealing of the record.

1.    <u>The File Should be Sealed to Protect Proprietary and Confidential Information from Disclosure</u>

     Mofet is quite surprised by GDLS's letter and sudden change in position regarding the confidentiality of the documents through the Arbitration proceedings. Mofet moved the Court to seal the memorandum and attached documents and exhibits to preserve the confidential information of both Mofet and GDLS arising from the confidential Arbitration proceedings. Under the International Centre for Dispute Resolution rules, "[c]onfidential information disclosed during the proceedings by the parties or by witnesses shall not be divulged by an arbitrator or by the administrator. Except as provided in Article 27, unless otherwise agreed by the parties, or required by applicable law, the members of the tribunal and the administrator shall keep confidential all matters relating to the arbitration or the award." Pursuant to Article 27, "[a]n award may be made public only with the consent of all parties or as required by law." Sealing the record preserves the confidentiality of the information disclosed in the Arbitration.

     The parties further ensured that the confidential information remained confidential by entering a protective order in the arbitration. Specifically, the parties agreed that the confidential information "shall not be used by that person in any other legal proceeding [other than appeal] or

any business, commercial, competitive, personal, or other purpose and shall not disclose to any third party (except as permitted below), including any news media." See Exhibit A, Protective Order at ¶ 2. The protective order further stated that "[t]he terms and conditions of this Protective Order shall survive and remain in force after the termination of this Action and any appeal therefrom." GDLS itself in a letter to the Arbitrator argued that the protective order "protects as 'confidential' not only trade secrets, but confidential information, proprietary information, business sensitive information, competitively sensitive information and any other confidential technical information, it is in fact more protective than what the parties are entitled to under New York law, which appears limited to 'confidential information' designation to trade secrets." See Exhibit B, GDLS letter to Arbitrator, § 1.A.

Based on these protections, the parties participated in 12 days of hearings, introduced thousands of confidential documents, and filed substantial post hearing memorandum. The testimony and the post hearing memorandum identify, discuss, and quote the thousands of documents and information marked as confidential by both parties. The parties submitted this information with the understanding that the proceedings are and will remain confidential so that neither GDLS's competitors nor Mofet's competitors would gain a competitive advantage through their disclosure.

Specifically, Mofet seeks to protect its confidential and proprietary information relating to the testing, evaluation, and application of its armor on various platforms as well as the material and pellet design of its armor technology for different applications. For example, Mofet's briefings discuss documents from the U.S. Army at TACOM that shows the Army's desire to have Mofet's armor on trucks and HMMWVs. Details of Mofet's communications with TACOM would clearly give competing armor companies a competitive advantage in the marketplace. The documents in the record also disclose Mofet's royalty rate and money spent on research and development which would further give competitors a distinct advantage in negotiating their armor prices and applications.

The cases cited by GDLS to support full access of confidential information in this Court are inapplicable to this case. Those cited cases relate to interactions with government officials that the public has a strong interest in the details of those interactions. In fact, the majority of the cases involved a newspaper petitioning the court to unseal the documents. *U.S. v. Amadeo*, 44 F.3d 141 (2d Cir. 1995) (involving the government bringing RICO action against a labor union, and a newspaper seeking to unseal the record); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) (involving a newspaper intervening to unseal the record for a case involving the fraudulent lobbying of a state for funds); *In re Terrorist Attacks on September 11, 2001*, 454 F.Supp.2d 220 (S.D.N.Y. 2006) (involving the victims of the September 11th attacks making the public concern unquestionable). The public policy concerns in these cases cited by GDLS are great.

This case, on the other hand, involves the contractual relationship between two non-governmental companies and the disclosure of confidential and proprietary information, the disclosure of which would harm Mofet in the market place. The Second Circuit in *U.S. v. Amodeo* (cited by GDLS) itself distinguishes the facts in that case from the facts here. The court

states that "[c]ommercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts...." 71 F.3d 1044, 1051 (2d Cir. 1995).

More instructional than the cases cited by GDLS is *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 827 (2d Cir. 1997) wherein the Second Circuit upheld the district court's ruling to seal the entire file with the exception of the court's opinions and orders. The court found that the Court's opinions and orders were adequate disclosure for the public.

Here, the parties are attaching the Arbitrator's order, the arbitration transcripts, and the post-hearing briefs. The transcript, order, and briefs are replete with proprietary and confidential information ranging from technical data, testing data, proposal information, and marketing strategies. Disclosure of this information will provide an unfair advantage to armor competitors that choose to read and analyze the record. The public will have sufficient access to the issues of the case through the court's orders and opinions. Accordingly, the record should remain sealed and GDLS should not be permitted to file its brief and supporting exhibits unsealed.

2.   If the Court Unseals the File, the Entirety of the File Should Remain Unsealed

If the court finds that sealing of the record is not appropriate, the entire file should remain unsealed. The confidential and proprietary information is so intertwined with the briefs and transcripts that a partial sealing of the file is impractical and would result in a partial disclosure that would mislead the public. Accordingly, the only appropriate remedy short of sealing the entire file would be full access to the file.

Respectfully submitted,

*[signature]*

Jeffrey P. Bialos

cc:   Susan C. Levy, Esq. (Via Fax)

*[Handwritten note from judge:]* Mofet has not overcome the presumption of public access to records of judicial proceedings. See *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995). Although the Court would normally give Mofet the opportunity to demonstrate the need for confidential treatment of certain records, Mofet's position, stated above, that partial sealing is impractical compels the conclusion that the entire file should be unsealed. It is SO ORDERED.

August 24, 2007

Loretta A. Preska
USDJ